1
2
3
4
5              UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8    ERNESTINA SALDANA-NEILY,                    No. C-04-4571 MJJ (EMC)

9              Plaintiff,

10       v.                                      **REPORT AND RECOMMENDATION
                                                 GRANTING PLAINTIFF'S MOTION
11   TACO BELL OF AMERICA, INC., *et al.*,       FOR ATTORNEY'S FEES**

12             Defendants.                       **(Docket No. 75)**
     _____/
13

14

15        Plaintiff Ernestina Saldana-Neily sued the Taco Bell Defendants and the Union 76

16   Defendants for disability discrimination under federal and state law.  The Union 76 Defendants

17   settled with Ms. Saldana-Neily, with the latter receiving injunctive and compensatory relief.  Ms.

18   Saldana-Neily now moves the Court for an award of attorney's fees, litigation expenses, and costs.

19   Having considered the parties' briefs and accompanying submissions, as well as the oral argument

20   of counsel, the Court hereby recommends that the motion be **GRANTED**.

21                     **I.    FACTUAL & PROCEDURAL BACKGROUND**

22        In the complaint, Ms. Saldana-Neily alleges that she is a physically disabled person who

23   cannot walk and who requires the use of a wheelchair.  *See* Compl. ¶ 5.  According to Ms. Saldana-

24   Neily, on or about May 15, 2004, she and her husband were returning home after a drive when they

25   decided to leave the freeway to buy lunch.  *See* Compl. ¶ 10.  They stopped at a Taco Bell

26   restaurant, and, while waiting for their food, Ms. Saldana-Neily felt the need to use the restroom.

27   *See* Compl. ¶ 10.  The restaurant's restroom, however, was not accessible as the restroom door was

28   too narrow for Ms. Saldana-Neily to enter in her wheelchair.  *See* Compl. ¶ 10.  The Taco Bell

1  manager subsequently advised Ms. Saldana-Neily that there were no restrooms at the restaurant that

2  were accessible for disabled persons. *See* Compl. ¶ 10.

3      Because Ms. Saldana-Neily was experiencing physical discomfort from the need to use the

4  restroom, she determined to try to use a restroom at a nearby Union 76 service station. *See* Compl. ¶

5  11. Ms. Saldana-Neily was told by an employee there that there was a restroom inside the service

6  station, but Ms. Saldana-Neily was not able to access the restroom because the entrance into the

7  station was blocked to wheelchair entry by a rack with some form of merchandise. *See* Compl. ¶ 11.

8  The employee, after some difficulty, was able to move the rack out of the way but, when Ms.

9  Saldana-Neily reached the restroom, that entry was also blocked by merchandise, and she was

10  unable to reach the toilet before she had a bodily functions accident resulting in the soiling of her

11  clothes. *See* Compl. ¶ 11.

12      Based on the above allegations, Ms. Saldana-Neily sued both the Taco Bell Defendants and

13  the Union 76 Defendants for disability discrimination. She filed her complaint on October 28, 2004.

14  *See* Docket No. 2 (complaint). On December 3, 2004, the Taco Bell Defendants answered the

15  complaint, *see* Docket No. 15, and, on January 3, 2005, the Union 76 Defendants answered. *See*

16  Docket No. 23 (answer). In a joint case management conference dated February 1, 2005, the Union

17  76 Defendants denied the allegations in the complaint and stated that they were in "compli[ance]

18  with all applicable laws governing accessibility." Docket No. 32, at 14 (joint case management

19  conference statement).

20      On February 28, 2005, all parties entered into a stipulation in which they agreed that Ms.

21  Saldana-Neily's claims for injunctive relief against the Taco Bell Defendants would be stayed; that

22  all formal discovery would be stayed except for a site inspection of the facilities at issue; and that,

23  after the site inspection, a settlement conference with a magistrate judge would be scheduled. *See*

24  Docket No. 38 (stipulation). Judge Jenkins subsequently signed the parties' stipulation. *See* Docket

25  No. 41 (order).

26      On July 12, 2005, a settlement conference with a magistrate judge was held. No settlement

27  was reached at that time, and the conference was continued to a later date. *See* Docket No. 53

28  (minute order). Approximately two weeks later, another settlement conference was held on July 29,

2

1  2005. As above, no settlement was reached at that time. *See* Docket No. 56 (minute order). On

2  October 26, 2005, a third settlement conference was held, at which time the case settled with respect

3  to the claims for damages and injunctive relief against the Union 76 Defendants. *See* Docket No. 63

4  (minute order). Several days later, Ms. Saldana-Neily and the Union 76 Defendants submitted to

5  Judge Jenkins a proposed consent decree and order. *See* Docket No. 64 (proposed consent decree

6  and order).

7      Subsequently, on January 6, 2006, Ms. Saldana-Neily and the Union 76 Defendants

8  withdrew the proposed consent decree and order and submitted a revised one in its stead. *See*

9  Docket Nos. 70-71 (proposed consent decree and order; stipulation and proposed order). Judge

10  Jenkins permitted the withdrawal and signed the revised consent decree and order on January 11,

11  2006. *See* Docket Nos. 72-73 (stipulated order; consent decree and order). Under the revised

12  consent decree and order, the parties agreed that the Union 76 Defendants would undertake all

13  remedial work as set forth in the Disabled Access Evaluation performed by Jonathan Adler, Ms.

14  Saldana-Neily's consultant. *See* Docket No. 73, at 4. The parties also agreed that the Union 76

15  Defendants would pay $10,000 to Ms. Saldana-Neily as damages. *See* Docket No. 73, at 5. The

16  parties did not, however, reach an agreement regarding Ms. Saldana-Neily's claims for attorney's

17  fees, litigation expenses, and costs. *See* Docket No. 73, at 5.

18      Approximately one year and nine months later, on October 29, 2007, Ms. Saldana-Neily filed

19  the currently pending motion for fees, expenses, and costs. According to Ms. Saldana-Neily, she

20  delayed filing the motion because she was hoping that the Taco Bell part of the case would also

21  settle so that she could make one motion for all attorney's fees, litigation expenses, and costs. *See*

22  Mot. at 5-6.

23                          **II.  DISCUSSION**

24  A.  Legal Standard

25      The Americans with Disabilities Act ("ADA") provides that, "[i]n any action or

26  administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion,

27  may allow the prevailing party, other than the United States, a reasonable attorney's fee, including

28  litigation expenses, and costs . . . ." 42 U.S.C. § 12205. In addition, under California Civil Code §

3

55, "[t]he prevailing party in [an action for violation of California Civil Code § 54.1, which provides

that individuals with disabilities shall be entitled to full and equal access,] shall be entitled to

recover reasonable attorney's fees." Cal. Civ. Code § 55. Finally, under California Code of Civil

Procedure § 1021.5,

> a court may award attorneys' fees to a successful party against one or
> more opposing parties in any action which has resulted in the
> enforcement of an important right affecting the public interest if: (a) a
> significant benefit, whether pecuniary or nonpecuniary, has been
> conferred on the general public or a large class of persons, (b) the
> necessity and financial burden of private enforcement, or of
> enforcement by one public entity against another public entity, are
> such as to make the award appropriate, and (c) such fees should not in
> the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. Proc. § 1021.5.

Ms. Saldana-Neily argues that an award of attorney's fees, litigation expenses, and costs is

appropriate pursuant to all three statutes. The Union 76 Defendants do not contest the applicability

of the statutes, focusing largely on the argument that the fees sought are not reasonable. The Court

analyzes Ms. Saldana-Neily's motion under the ADA standard, especially since the federal statute,

unlike the state statutes, explicitly provides for not only attorney's fees but also litigation expenses

and costs.

B.     Prevailing Party

There is no real dispute that Ms. Saldana-Neily was the prevailing party in her action against

the Union 76 Defendants. The action was resolved by a court-ordered consent decree pursuant to

which she obtained significant injunctive relief and received compensatory damages in the amount

of $10,000. *See Buckhannon Bd. & Care Home v. West Va. Dep't of Health & Human Res.*, 532

U.S. 598, 604 (2001) ("[E]nforceable judgments on the merits and court-ordered consent decrees

create the 'material alteration of the legal relationship of the parties' necessary to permit an award of

attorney's fees."); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("[P]laintiffs may be considered

prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation

which achieves some of the benefit the parties sought in bringing suit.") (internal quotation marks

omitted). The Court therefore turns to the issue of whether attorney's fees, litigation expenses, and

costs should be awarded and, if so, in what amount.

4

C.      Attorney's Fees

     1.      Special Circumstances

As a preliminary matter, the Union 76 Defendants argue that no fees should be awarded at all because there are special circumstances that would make an award unjust. *See* Opp'n at 2-3 (citing *Hensley*, 461 U.S. at 429 ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal quotation marks omitted)). They identify two alleged special circumstances: (1) that they are small business owners who had owned the service station for only a short time before the incident at issue and (2) that they tried to get early resolution of the case but were "beaten back by plaintiff's counsel." Opp'n at 2.

The Court does not find either argument convincing. First, the Union 76 Defendants cite no authority in support of their proposition that the size of a business is a special circumstance that can immunize it from liability for fees. As for the fact that the Union 76 Defendants may have owned the service station for only a short time before the incident at issue, that is, at best, of marginal relevance with respect to the issue of fees (as opposed to, *e.g.*, the issue of liability). The bulk of the fees at issue were incurred after the complaint was filed -- *i.e.*, the fees were incurred because of how the Union 76 Defendants reacted to the lawsuit, not the predecessor owners of the service station.

Second, the Union 76 Defendants' contention that the case would have been quickly resolved but for the conduct of counsel for Ms. Saldana-Neily is not borne out by the record. Whether or not counsel for Ms. Saldana-Neily appropriately advised the Union 76 Defendants that they should hire an attorney, the bottom line is that the case was prolonged in part because the Union 76 Defendants denied liability and, for whatever reason, it took three settlement conferences before a magistrate judge to resolve the dispute. There is no evidence prolonged nature of the settlement discussions was due to counsel for Ms. Saldana-Neily making unreasonable settlement demands. Indeed, it appears that counsel for Ms. Saldana-Neily made some effort to limit the incurring of fees, *e.g.*, by entering into a stipulation that formal discovery would be stayed except for a site inspection of the facilities at issue.

5

1    Because there are no special circumstances that would make an award of fees unjust, the only

2    remaining question for the Court is what is a reasonable fee.

3         2.    Lodestar

4    Reasonable attorney's fees are determined by first calculating the lodestar. *See Jordan v.*

5    *Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). The lodestar is calculated by multiplying

6    the number of hours the prevailing party reasonably expended on the litigation by a reasonable

7    hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). According to Ms.

8    Saldana-Neily, the proper lodestar is **$45,530** (excluding fees incurred for preparation of the reply

9    brief for the fee motion). *See* Mot. at 25. The Court addresses the issues of reasonable hourly rate

10   and reasonable number of hours below.

11        a.    Hourly Rate

12   Ms. Saldana-Neily was represented by the Law Offices of Paul L. Rein. Three attorneys

13   from that law firm worked on her case: Mr. Rein himself, Patricia Barbosa, and Julie Ostil.

14   Mr. Rein, a graduate of Boalt Hall of the University of California, Berkeley, has been a

15   lawyer for more than 38 years since his admission to the California State Bar in 1969. *See* Rein

16   Decl. ¶ 1. He has represented disabled persons in civil rights disability access lawsuits for the past

17   32 years and has successfully litigated cases that have helped define the parameters of disability

18   access law in California. *See* Rein Decl. ¶¶ 1, 31, 33 37-52. He has published multiple articles on

19   disability access issues and participated as a lecturer for multiple attorney groups and law schools on

20   the same. *See* Rein Decl. ¶¶ 34-36. Ms. Saldana-Naily argues that a reasonable hourly rate for Mr.

21   Rein is $435.

22   Ms. Barbosa has been an attorney for more than 20 years. *See* Barbosa Decl. ¶ 2. Prior to

23   joining the Rein law firm, she was a deputy attorney general in the California Department of Justice,

24   where she worked on disability discrimination cases, and then a private consultant for local

25   government agencies on disability access issues. *See* Barbosa Decl. ¶ 3. She also served as an

26   editor for the California Attorney General's "Disabled Rights Handbook" and an adjunct professor

27   at Trinity Law School. *See* Barbosa Decl. ¶¶ 2-3. Since joining the Rein law firm in 199, she has

28

6

1  acted as lead counsel in over 200 civil rights cases in federal courts in California.  *See* Barbosa Decl.

2  ¶ 4.  Ms. Saldana-Neily argues that a reasonable hourly rate for Ms. Barbosa is $400.

3      Julie Ostil, also a graduate of Boalt Hall, was admitted to the California State Bar in 2001.

4  *See* Ostil Decl. ¶ 3.  Prior to joining the Rein law firm, she was a staff attorney at a nonprofit agency

5  serving low-income Bay Area residents.  *See* Ostil Decl. ¶ 3.  Since joining the law firm, she has

6  been lead counsel on multiple disability access cases in federal court.  *See* Ostil Decl. ¶ 3.  Ms.

7  Saldana-Neil argues that a reasonable hourly rate for Ms. Ostil is $275.

8      The Court has reviewed the declarations of Mr. Rein, Ms. Barbosa, and Ms. Ostil.  It has also

9  reviewed the declarations (provided by the Rein law firm) that attorneys submitted in other cases in

10  which Mr. Rein sought fees.[1]  Some of these attorneys have personal knowledge of Mr. Rein's work

11  having served as co-counsel with him on at least one case.  These attorneys opine that Mr. Rein

12  would be entitled to an hourly rate in excess of $435.  *See, e.g.*, Burris Decl. ¶¶ 6-7, 10 (stating that

13  he has served as co-counsel with Mr. Rein on at least ten disability access cases, that "Mr. Rein

14  performed each [case] with a high level of skill," that Mr. Rein's " expertise contributed greatly to

15  the outstanding results that were achieved," and that an hourly rate of $500 for Mr. Rein is justified);

16  Cohen Decl. ¶¶ 11-13 (stating that he is familiar with Mr. Rein's work and expertise having

17  previously served as co-counsel with Mr. Rein and that an hourly rate of $435 "is below the amount

18  [Mr. Rein] could charge and recover and is below the amount that persons with less experience do

19  charge and recover").  Finally, the Court has reviewed several  decisions issued by other judges in

20  this District who have ruled on fee motions made by the Rein law firm.  In 2007, hourly rates of

21  $435 were approved for Mr. Rein, $400 for Ms. Barbosa, and $275 for Ms. Ostil.  *See, e.g.*, *Mannick*

22  *v. Kaiser Found. Health Plan, Inc.*, C-03-5905 PJH (available at Rein Decl., Ex. 16) (in 2007,

23  approving an hourly rate of $435 for Mr. Rein, $400 for Ms. Barbosa, and $275 for Ms. Ostil);

24  *George v. Bay Area Rapid Transit Dist.*, No. C 00-2206 CW, 2007 U.S. Dist. LEXIS 72812 (N.D.

25  Cal. Sept. 21, 2007) (in 2007, approving an hourly rate of $435 for Mr. Rein, $400 for Ms. Barbosa,

26

27      [1] These attorneys speak to the appropriate hourly rate for Mr. Rein, and not Ms. Barbosa or Ms.
28  Ostil.  In his declaration, Mr. Rein claims that, based on his experience, he believes that a reasonable
rate for Ms. Barbosa is $400 per hour.  *See* Rein Decl. ¶ 60.

and \$275 for Ms. Ostil); *see also Chavez v. Chevy's Fresh Mex Restaurant*, C-01-4322 TEH

(available at Rein Decl., Ex. 13) (in 2003, approving an hourly rate of \$395 for Mr. Rein and \$345

for Ms. Barbosa).[2]

Taking into account the above, as well as the Court's own experience with fee claims in

other cases,[3] the Court finds that the hourly rates sought for Mr. Rein, Ms. Barbosa, and Ms. Ostil

are reasonable. None of the arguments to the contrary made by the Union 76 Defendants are

convincing.

For example, the Union 76 Defendants contend that the hourly rates are excessive because

"there was nothing novel or complex about plaintiff's claims" -- "plaintiff's counsel all but admitted

as much when he told defense counsel that he could not think of any defense they defendants would

have to the plaintiff's claims." Opp'n at 4. But the novelty or complexity of a claim tends to inform

the question of what is a reasonable number of hours spent on a case, not what is a reasonable hourly

rate. *See Blum v. Stenson*, 465 U.S. 886, 898 (noting that "[t]he novelty and complexity of the issues

presumably were fully reflected in the number of billable hours recorded by counsel and thus do not

warrant an upward adjustment in a fee based on the number of billable hours times reasonable

hourly rates").

The Union 76 Defendants also argue that the hourly rates are excessive because competent

counsel could be attracted for lower rates and because their own counsel charged smaller hourly

rates. *See* Opp'n at 4-6. Neither argument is availing. The Union 76 Defendants have failed to

---

[2] In each of the decisions cited, the opposing party did not appear to challenge the hourly rates sought.

[3] *See Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 U.S. Dist. LEXIS 8635, at *13-14 (N.D. Cal. Jan. 29, 2002) (Patel, J.) (stating that "[f]ee applicants sustain their burden of proof by submitting sufficient evidence that requested rates are comparable to the current market rates" and that, "[a]lternatively, in evaluating the requested hourly rate, a district court may rely on its own knowledge of comparable rates charged by other lawyers in the district"); *Keith v. Volpe*, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986) (in absence of submissions from defendants controverting rates requested by plaintiffs, relying on "its prior orders in this case, the rates recently awarded in comparable cases, and its own experience of legal practice in Los Angeles in determining appropriate hourly rates"); *see also Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940) (noting that "[t]he court, either trial or appellate, is itself an expert on the question and consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value").

1  provide any evidence in support of their first contention.  As to their second contention, there is no

2  evidence that their own attorney is a proper comparator for Ms. Saldana-Neily's attorneys in terms

3  of skill, experience, and reputation.  Nor does it take into account varying rates that often exists

4  between plaintiff and defense counsel.

5       Finally, the Union 76 Defendants suggest that the Court should question the hourly rates

6  sought because there is no market rate for the services of a disability rights attorney -- that is,

7  disability discrimination cases are taken on a contingent fee basis and "there is absolutely no

8  negotiation between the client/buyer and the attorney/seller regarding hourly billing rates."  Opp'n at

9  4.  This argument is without merit.  The Union 76 Defendants have offered no evidence that

10 disability discrimination cases are always taken on a contingent fee basis.  Even if they were, the

11 Supreme Court has instructed that a prevailing market rate can be defined -- even, *e.g.*, for a

12 nonprofit legal services organization -- as the rate "prevailing in the community for similar services

13 by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11;

14 *see also Hodges v. El Torito Restaurants*, No. C-96-2242 VRW, 1998 U.S. Dist. LEXIS 11517, at

15 *5-6 (N.D. Cal. Feb. 23, 1998) ("While the court is mindful of the fact that Rein has not actually

16 received this rate from a fee-paying client, the court realizes that such situations are not uncommon

17 among public interest lawyers.  The court will therefore fix an hourly rate that is consistent with

18 prevailing market rates for lawyers of similar experience in the San Francisco Bay area.").  It is

19 common for attorneys representing plaintiff in civil rights and personal injury cases to work

20 regularly on a contingency basis.  That fact does not bar recovery of statutory fees based on

21 prevailing market rate rather than fees actually charged by the particular attorney.

22            b.       Number of Hours

23      Having determined what the reasonable hourly rates for the attorneys are, the Court now

24 turns to the question of whether the number of hours for which Ms. Saldana-Neily seeks

25 compensation were reasonably expended on the litigation.

26      As a preliminary matter, the Court notes that, although the Union 76 Defendants contest the

27 hours in certain respects as discussed below, they have not argued -- including at the hearing on the

28 motion for fees -- that the hours billed by Ms. Saldana-Neily's attorneys were, in the aggregate, out

9

1    of line compared to the hours billed by their own attorneys in defending the case. The main

2    arguments of the Union 76 Defendants are as follows: (1) The bills included mistaken charges, and

3    (2) the attorneys failed to exercise billing judgment (*e.g.*, overbilling for the fee motion and for

4    relatively simple tasks, performing work that should have been done by nonlawyers, engaging in

5    unnecessary duplication of work, improperly charging for travel time, improperly charging for work

6    performed by a paralegal).

7                                    i.        Mistaken Charges

8           In their opposition brief, the Union 76 Defendants argue first that Ms. Saldana-Neily's

9    attorneys mistakenly attributed to the Union 76 Defendants certain charges (totaling $801.50) that

10   were related solely to the Taco Bell Defendants. *See* Opp'n at 6. In her reply brief, Ms. Saldana-

11   Neily concedes the error, *see* Reply at 1, and the Court's own review of the billing records

12   establishes that the Union 76 Defendants are correct. Accordingly, the Court deducts **$801.50** from

13   the fee award sought by Ms. Saldana-Neily.

14          The Union 76 Defendants also argue that Ms. Saldana-Neily's attorneys made an error in

15   calculating the fees incurred by Ms. Barbosa. According to the Union 76 Defendants, "Plaintiff's

16   calculation includes half an hour that Ms. Barbosa reportedly devoted to work affecting the Union

17   76 defendants only [but] [h]er timesheet has no blue highlighting at all." Opp'n at 11. With her

18   reply brief, Ms. Saldana-Neily provided the full timesheets for Ms. Barbosa, which justifies the

19   charges sought and demonstrates that there was no real error. *See* Reply at 14; Supp. Rein Decl., Ex.

20   18. The Court, therefore, shall make no deduction here.

21          The Union 76 Defendants further argue that Ms. Saldana-Neily's attorneys made an error in

22   calculating the fees incurred by Ms. Ostil. More specifically, they assert that "Ms. Ostil's total

23   hours billed for work relating solely to the Union 76 defendants appears to be 18.3 hours

24   (highlighted in blue); yet the calculation is based upon 19.7 hours." Opp'n at 11-12. The Court has

25   reviewed Ms. Ostil's billing records. *See* Ostil Decl., Ex. 1. Based on its review, the Court finds

26   that there was an error in calculation; that is, Ms. Ostil billed a total of 17.6 hours for work relating

27

28

solely to the Union 76 Defendants.[4]  In light of this error, the Court concludes that Ms. Ostil's time should be reduced by 1.4 hours (*i.e.*, 19.7 hours – 0.7 hours – 17.6 hours = 1.4 hours), which results in a decrease of **$385** in the fee award.

Finally, the Union 76 Defendants contend that an error in calculation was made with respect to the charges by Mr. Rein. *See* Opp'n at 12 ("[The Union 76] defendants have calculated the total at the level of $31,972.75, whereas plaintiff's number is $33,800."). The Court has reviewed the timesheets of Mr. Rein. *See* Rein Decl., Ex. 3. Based on its review, the Court finds that the charges of Mr. Rein total $31,385.50.[5] This warrants a decrease of **$1,805.50** (*i.e.*, $33,800 – $609 – $31,385.50 = $1,805.50).

In sum, taking into account the mistaken charges, the $45,530 in fees sought by Ms. Saldana-Neily should be reduced to **$42,538** (*i.e.*, $45,530 – $801.50 – $385 – $1,805.50 = $42,538).

ii.    Billing Judgment

In *Hensley*, the Supreme Court emphasized that a fee applicant

> should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Hensley*, 461 U.S. at 434 (internal quotation marks omitted; emphasis in original).

In their opposition brief, the Union 76 Defendants contend that Ms. Saldana-Neily's attorneys failed to exercise billing judgment in multiple ways. Some of the examples provided by the Union 76 Defendants are not very compelling. For example, the Court is not persuaded that the time billed by the attorneys for the opening briefing on the fee motion was excessive. Although some parts of the opening brief and the supporting declarations were no doubt a "cut-and-paste job"

---

[4] This excludes the time that was mistakenly attributed to the Union 76 Defendants that was related solely to the Taco Bell Defendants. *See* Opp'n at 6 (listing 0.7 hours of time by Ms. Ostil that were mistakenly attributed).

[5] This sum excludes the fees mistakenly attributed to the Union 76 Defendants that were related solely to the Taco Bell Defendants. *See* Opp'n at 6 (listing $609 in charges by Mr. Rein that were mistakenly attributed).

1  (*e.g.*, the statutory basis of the fee request, description of the experience of the attorneys), a

2  significant portion of the brief and supporting declarations were clearly written for this specific

3  litigation.  The Court cannot say that a total of approximately 24 hours was unreasonable.

4        The Court is likewise unconvinced that Ms. Saldana-Neily's attorneys improperly charged

5  their travel time.  The main contention of the Union 76 Defendants seems to be that the attorneys

6  should have charged a reduced rate for their travel time, *see, e.g.*, *MacDougal v. Catalyst Nightclub*,

7  58 F. Supp. 2d 1101, 1106-07 (N.D. Cal. 1999) (noting that "'a different rate of compensation may

8  well be set for different types of litigation tasks'" and applying a reduced rate -- $195 per hour

9  instead of $325 per hour -- to half of the attorney travel time), but there is no Ninth Circuit precedent

10  that requires such.  Furthermore, as the Seventh Circuit has explained, there is a strong reason why a

11  lawyer should be able to charge his or her customary rate for travel time alone: "When a lawyer

12  travels for one client he incurs an opportunity cost that is equal to the fee he would have charged

13  that or another client if he had been been traveling."[6] *Henry v. Webermeier*, 738 F.2d 188, 194 (7th

14  Cir. 1984).

15        Finally, the Union 76 Defendants' challenge to the time charged for the paralegal, Scott

16  Holmes, is not convincing.  According to the Union 76 Defendants, "there is no evidence that the

17  time sheet for Mr. Holmes'[s] work is accurate" because "Steven L. Rein [another paralegal] does

18  not have the requisite personal knowledge to attest to the fact that Mr. Holmes'[s] time record is

19  accurate."  Opp'n at 12.  However, it is sufficient that Steven L. Rein testified in his declaration that

20  Mr. Holmes's time sheets, "kept in the regular course of business and contemporaneously with the

21  work performed, reflects 5.5 hours."  Steven L. Rein Decl. ¶ 7.  The Union 76 Defendants also argue

22  that it is not clear that Mr. Holmes's time record "reflects work performed solely with respect to the

23

24      [6] Although the Union 76 Defendants' main contention is that there should be a reduced *rate* for
the travel time, they actually propose that the Court should reduce the number of *hours* charged for the

25  travel time.  More specifically, they suggest that the Court deduct "one hour . . . from each of the seven
trips made by Mr. Rein which required travel."  Opp'n at 10.  The Court is unwilling to make an across-

26  the-board reduction.  Mr. Rein's office is located in Oakland.  The majority of travel time seems to have
been incurred for trips to and from San Francisco.  However, there was at least one occasion where a

27  comparison of the Court's record for time spent in settlement conference to Mr. Rein's billing reveals
approximately 2 hours for travel.  The Court takes this liberal billing approach in assessing billing

28  judgment below.

12

1  Union 76 Defendants," Opp'n at 12, but only half of Mr. Holmes's time was attributed to the Union

2  76 Defendants.

3      While the Court rejects the above assertions, the Court finds that there are other arguments

4  which do establish a failure to exercise billing judgment in important respects. Although many of

5  Defendants' arguments focus on specific problems with particular practices and time entries and

6  they made an effort to quantify many of them, the Court finds that the deficits discussed herein are

7  not readily quantifiable with any degree of precision because of instances of block billing by

8  Plaintiff's counsel. Moreover, as discussed below, a substantial amount of the billing judgment

9  assessed by the Court pertains not to the accuracy of hours actually billed, but to duplication and

10  inefficiencies.

11      Accordingly, the Court is tasked with making an overall assessment based on billing

12  judgment. In doing so, it considers a number of issues.

13      First, there is the issue of overbilling. The Court is especially troubled by Mr. Rein's

14  statement at the hearing on the fee motion that he rounds up once the tenth of an hour is exceeded

15  and never rounds down (*e.g.*, if he has worked for only seven minutes, he charges 0.2 hours and not

16  0.1 hours of time). A declaration from defense counsel substantiates Mr. Rein's statement, *see*

17  Grotch Decl. ¶ 17 ("I can state that in most instances, when I participated in a telephone conference

18  with Mr. Rein, I billed one tenth of an hour less than Mr. Rein billed for participating in the very

19  same conversation."), as do Mr. Rein's billing records themselves. *See* Rein Decl., Ex. 3. For

20  example, Mr. Rein charged 0.2 hours for each of the following relatively simple tasks: (1) reviewing

21  and signing the consent form pursuant to which the case could be presided by a magistrate judge; (2)

22  receiving Defendants' declaration to proceed before a magistrate judge and request for

23  reassignment; and (3) receiving notices from the Court setting a case management conference. *See*

24  Rein Decl., Ex. 3 (entries dated 11/5/2004, 11/24/2004, 12/6/2004, and 12/7/2004).

25      Although Mr. Rein's overbilling is most problematic because his fees make up the bulk of

26  the fee request, the Court notes that there were also instances of overbilling by the other attorneys on

27  the case. As the Union 76 Defendants point out in their opposition brief, it seems excessive for Ms.

28  Barbosa to have billed 0.4 hours for reviewing and revising a notice of unavailability and drafting a

**United States District Court**
For the Northern District of California

1    letter to defense counsel regarding Mr. Rein's out-of-state commitments. *See* Barbosa Decl., Ex. 1

2    (entry dated 11/30/2004). Also, on one occasion, Ms. Ostil billed her attorney rate for work that

3    should have been performed by a nonlawyer as it was purely clerical or secretarial in nature. *See*

4    *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) (stating that "purely clerical or secretarial tasks

5    should not be billed at a paralegal rate, regardless of who performs them"); Ostil Decl., Ex. 1 (entry

6    dated 11/2/2005) (billing 0.2 hours for "[p]reparation of pleadings -- efile consent decree and

7    coverletter [sic]").

8        Second, aside from overbilling, the Court has concerns regarding unnecessary duplication of

9    work. For example, given Mr. Rein's experience, it is not clear why both he and Ms. Ostil needed to

10   attend the settlement conference on July 12, 2005. *See* Rein Decl., Ex. 3 (entry dated 7/12/2005

11   reflecting 4.5 hours for settlement conference); Ostil Decl., Ex. 1 (same). Also, as the Union 76

12   Defendants point out, some unnecessary duplication of work appears to have occurred based on the

13   number of intra-office conferences that were held by Ms. Saldana-Neily's attorneys and the number

14   of times one attorney would review the work product of another attorney. (Notably, Ms. Ostil, the

15   junior attorney, would often review the work product of Mr. Rein, the senior attorney. *See, e.g.*,

16   Ostil Decl., Ex. 1 (entries dated 5/17/2005, 6/8/2005, 6/10/2005, 6/27/2005, 7/15/2005, 7/25/2005,

17   8/1/2005, 8/12/2005, 8/15/2005, and 3/22/2006).) This is not to say that the intra-office conferences

18   and internal review of work product were completely unjustified. In any litigation, some team

19   meetings or discussions are necessary. Nor is it unreasonable for one attorney to review the work of

20   another where a filing is important or complex. But given the relative simplicity of the case against

21   the Union 76 Defendants and the expertise of counsel in disability access cases, these could and

22   should have been kept to a minimum. There were, instead, inefficiencies.

23        Third, this case was not complicated. No substantive motions or significant discovery was

24   undertaken. There were no novel issues as pertains to the Union 76 Defendants. The total number

25   of hours incurred are not warranted given the relative simplicity of the case and lack of substantive

26   case development.

27        Because there is evidence of at least some overbilling and unnecessary duplication of work

28   and inefficiencies, the Court finds that there was a failure by Ms. Saldana-Neily's attorneys to

1 exercise billing judgment with respect to the fee motion. From what the Court can divine from the

2 record, there was no attempt whatsoever by Ms. Saldana-Neily's lawyers to make any reduction in

3 the hours claimed. *See* 2 Schwartz & Kirklin, Section 1983 Litigation § 1983, at 174-75 (noting that

4 "the plaintiff's elimination of a substantial number of hours from a fee application in the exercise of

5 billing judgment tends to fortify the argument that the remaining hours were reasonably expended").

6      In making an appropriate adjustment because of the lack of billing judgment, a court is not

7 required to set forth an hour-by-hour analysis of the fee request and may instead reduce the award on

8 a percentage basis so long as there is a concise but clear explanation of the court's reasons for

9 choosing a given percentage reduction. *See Gates v. Deukmejian*, 987 F.2d 1392, 1399-1400 (9th

10 Cir. 1993). In the instant case, an hour-by-hour analysis of the fee request in the instant case is

11 impractical. Thus, the Court instead reduces the award on a percentage basis. Taking into

12 consideration the above problems, the Court concludes that a reduction of 15% for billing judgment

13 is appropriate.

14      Applying a 15% reduction, the Court finds that fees totaling **$36,157.30** (*i.e.*, 85% x $42,538

15 = $36,157.30) is reasonable.

16 D.    Litigation Expenses and Costs

17      Ms. Saldana-Neily seeks litigation expenses and costs in the amount of **$5,356**. *See* Mot. at

18 25. The bulk of the expenses and costs comes from the fees incurred for the access consultant

19 Jonathan Adler. *See* Mot. at 25; Rein Decl. ¶ 26 (stating that $4,016 were incurred for Mr. Adler's

20 work involving the service station).

21      In their opposition to the fee motion, the Union 76 Defendants do not dispute Mr. Adler's

22 fee. The only argument they make is that the in-house copying costs are unreasonable: "There is no

23 indication of how the figure of $1,022 was derived and it seems rather inconceivable that there was

24 any need to generate 4,088 pages of copies. [Also], there is the issue of billing for each copy at a

25 rate of 25 cents per page" instead of just 10 cents per page. Opp'n at 12.

26      The Court rejects the Union 76 Defendants' contention that 25 cents per page is an excessive

27 charge. Judge Wilken recently approved that rate in *George*, 2007 U.S. Dist. LEXIS 72812, at *22

28 (also noting that "Defendant provides no evidence that $.20 per page is its counsel's rate or the

1 market rate"). As to the argument there was no need to generate 4,088 pages of copies ($1,022 ÷

2 $0.25 per page = 4,088 pages), those copies were made for the lawsuit against *both* the Taco Bell

3 Defendants and the Union 76 Defendants. In the cost bill here, only half of those copies, *i.e.*, 2,044

4 pages, were attributed to the Union 76 Defendants. *See* Steven L. Rein Decl. ¶ 4. The Court cannot

5 say that this number of pages is patently unreasonable given, *e.g.*, the length of the litigation, the

6 number of settlement conferences, the site inspection and consultant evaluation, the consent decree,

7 and the fee motion.

8          The Court concludes the costs sought by Ms. Saldana-Neily are reasonable.

9 E.          Additional Fees and Costs

10          Finally, the Court takes note of Ms. Saldana-Neily's request for additional attorney's fees

11 and costs incurred largely as a result of preparation of the reply brief for the fee motion. More

12 specifically, Ms. Saldana-Neily asks for additional attorney's fees in the amount of **$6,960**

13 (representing 16 hours of Mr. Rein's time) and costs in the amount of **$200**. *See* Reply at 15.

14          The Court shall reduce the fee award for two reasons. First, there was one charge attributed

15 to the Union 76 Defendants that was related solely to the Taco Bell Defendants. *See* Rein Reply

16 Decl., Ex. 17 (entry dated 11/1/2007) (charging 0.2 hours for work related to counsel representing

17 Taco Bell Defendants). Second, in at least one instance, Mr. Rein overbilled for a relatively simple

18 task. *See, e.g.*, Rein Reply Decl., Ex. 17 (entry dated 11/2/2007) (charging 0.2 hours for receiving

19 and reviewing order assigning all discovery to magistrate and procedures for discovery matters).

20 Taking these problems into account, the Court concludes that a reasonable attorney's fee for the

21 additional work is **$6,829.50**, representing 15.7 hours of Mr. Rein's time.

22          As to the request for additional costs, Mr. Rein states in his declaration that he only *estimates*

23 costs to be $200, "primarily for copying and overnight mail deliveries in relation to provision of

24 plaintiff's pleadings to the Court, defense counsel, and co-counsel." Rein Reply Decl. ¶ 5. Because

25 the Court has never received any information as to actual costs incurred, there is no co-counsel of

26 record, and this is an e-filing case, the Court finds that costs likely did not exceed **$50**, which is a

27 reasonable sum.

28

16

F.    Multiplier

Finally, Ms. Saldana-Neily argues that the Court should apply a multiplier of 1.5 to the fee award.  This argument was made in passing only.  *See* Mot. at 25.  The Court in its discretion declines to apply a multiplier.  There is no basis for applying a multiplier, particularly where proof of liability was not extraordinarily difficult or risky and the case relatively simple.

## III.    RECOMMENDATION

For the foregoing reasons, the Court recommends that Ms. Saldana-Neily's motion for attorney's fees, litigation expenses, and costs be granted and that Ms. Saldana-Neily be awarded **$48,392.80**.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated:  March 4, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

17